May it please the court, good morning. My name is Jason DeMont representing In Re Giacomini. I don't have any comments this morning in particular for you, but I'd be happy to address any questions that you might have. Well, your argument seems to be that under 102E a provisional is not an application for a patent, right? Therefore, it should not receive prior art status. No, I don't think that's the argument. Tell me your argument, then we can start to talk. In the reply brief, we argue that it's irrelevant whether or not a provisional application is an application for a patent or not. The question is, there are two documents in the appeal under consideration. One is the patent and one is the provisional. The question is, is the patent a prior art, effective, qualified prior art against the claims? And is the provisional a qualified reference? Well, section 111 says that a provisional is to be treated in every respect like an application for a patent. That's correct. And then 119 goes on and says it's to be given the same effect as an application for a patent. Well, 111 actually says that it will be treated as a non-provisional application subject to except as otherwise provided and also enumerates several other provisions. But the point is, a provisional is to be treated like any other application. It's to be given the same effect. Why doesn't that give it prior art effect? And why doesn't that make trans-provisional an anticipatory reference for your application? Well, I think the provisional is prior art. Under many circumstances, the provisional is prior art. The question is, what is its effective reference date? And I don't think that the effective reference date of trans-provisional is its filing date. I think that's the distinction. The reason being that 102- What's the whole purpose of a provisional? It's to reserve an early priority date. Oh, that's correct. Well, that's correct. For priority claims. In the same sense that a foreign application, a national filed application in Italy- If you're going to say it doesn't have any prior art effect on that date. I would say that it has exactly the same prior art effect as a foreign national application. So in other words, I think that it is a prior- It's a U.S. patent filing. It is by law to be given the same effect as any other filing. And by law, it's to be treated as an application for a patent. Well, I don't think it's treated- So I'm trying to figure out- Help me out. What am I missing? I think that a provisional application is an analog- After all, its priority claim was added to 119E. It was added to section 119. It was just meant to be another U.S. application. They would have added it to 120B. So in other words, you're saying it can give you a priority date, but it can't give you an earlier reference. I think that's exactly right. I think it's exactly identical to a foreign national application- But the problem is that 119E1 seems to specifically say that a provisional application will give you an earlier date for the patent that is issued. As though filed on the date. But I don't think that's the language. It says, as to such invention. It says- As though filed on the same date as the provisional, though. So it dates the whole thing back to the provisional. For such invention. That's exactly correct. Well, that's the same language as 120. Yes, it is the same language as 120. But why doesn't that give you the earlier reference date for the patent as issued? Well, because I think that 120 is for continuations and domestic non-provisionals. And I think domestic non-provisionals are treated differently than provisionals. I think that, like I said, provisionals are the domestic analog of foreign national applications. They were added under GATT to- But we're dealing with the language of 119. In 120, you agree that this language creates an earlier reference date, right? I'm not sure that I would say that I agree that that language is what provides- What other language than 120 does? Perhaps just precedent. Perhaps. I mean, I'm not sure that it's statutory. In other words, I'm not sure- I would not argue that the reason we've been according parent applications or patents, the filing date, the effective reference date of the parent applications is because of that language in 120. But you're still arguing that it's only a priority date for the invention, possibly for interferences and determination of priority of invention, but it's not a date for a reference, an earlier reference. That's correct. I would argue that this is identical to Hilmer. You cite Hilmer several times in your brief. Yes. Is Hilmer still good law? Do I think it's good law or do I think it's wise law? No, it's still good law. I'm sorry. Yes. I'll say yes. Are you sure? Very convincing. That's not very convincing at this point. I'm sorry. Are you asking me do I think it's good law, do I think it's precedential, or do I think it's wise and judicious in the big picture? Is it still good law in view of TRIPS? Yes. So how do we reconcile TRIPS with Hilmer? By treating provisionals in provisional applications consistently with foreign national applications. So if in fact foreign applications are provided by the domestic countries with a priority date not only for the invention but also for prior art, do we treat it the same way for provisional applications? Should we? I'm sorry, you're asking me for... If a foreign country treats its domestic applications with the opportunity not only to establish priority dates but also reference dates for prior art, do we have to treat provisional applications the same way? I would say no. Then we're not complying with TRIPS at that point, are we? Well, because I'm not sure the provisional applications... I'm not sure that other countries would consider our provisional applications to be analogs to their national applications. No, no. You said that we've adopted the provisional applications to be the analogs to foreign applications. For us. In the United States, that's correct. So we have to treat... They have to treat us the same way we treat them under TRIPS. Correct. So why is... Then let's go back to the original question. Is Hillary still good law under TRIPS? Yes, I think it is good law. It's not in conflict with TRIPS? To the best of my knowledge, it is not. I don't know of any foreign countries that do treat United States non-provisional applications or provisional applications in the way that you... They treat our provisional applications as foreign applications today, or do we treat them as foreign applications? I'm still not quite sure how we put it all together. If, in fact, there is a conflict between the two. I don't know. I don't have the answer either, but I thought maybe counsel would be helpful in trying to at least... I'm happy to research it and file a supplemental brief if you'd like. You cite to Milburn, but isn't the reasoning of Milburn precisely the reason we would give prior art status to this provisional? No, exactly not. No, to the contrary, they have made their disclosure. That's the whole point of Milburn. They have made their disclosure in expectation that their rights to that disclosure would be protected. They've done the same thing here. They have made an early disclosure with full understanding that it gives them rights going back to the date of that disclosure. I found your Milburn site to be very confusing. It's, of course, the origin of 102EA. Sure. I interpret Milburn as being the beginning of the theory of patent office delay. If you file a non-provisional patent application without delay on the part of the patent office, it issues, publishes the very, very next day. That's simply not the situation under a provisional application. But you have made your disclosure. Right. Of course, you have a time limit in which you must convert that into a patent application or you lose all rights to it. Or you abandon it and keep it a secret. It seems to me that you have committed yourself to the patent system and deserve its protection. I think that's exactly not how it works. I think what a lot of people do is they file provisional patent applications as a hedge. Because you know they advised you a year and you can watch and see how the environment develops. If you like the way the technological environment goes, then you can file a non-provisional. But you've shown that you invented it first. It's your idea. You've reserved your place in the queue. If you want. And you have shown. Let me ask you maybe this question slightly different. What if you win and we let you have a patent and you go out and try and enforce your patent? What's the first thing that's going to happen? Someone will cite TRAN against you as prior art. And what will the district court do? The TRAN provision? The TRAN provisional will be cited against you as evidence of prior invention, 102G prior art, and you will lose. Am I correct? You've conceded that it is totally anticipatory. So your concession that it's anticipatory will be waived to the district court. The district court will say, you've admitted they invented it first. You lose under 102G. Why would we put the system through that kind of travail of having to go to a trial court to acknowledge the prior art capacity of the TRAN disclosure instead of dealing with it at the patent office where it should be dealt with? I don't know how to answer your question under 102G. It's evidence of prior invention. But you've conceded that it anticipates you completely. Unless I'm missing something or somebody made a mistake in how they presented it. But it's not my understanding that all metaphysical evidence that someone else invented is available to invalidate claims. But in this case, it's very easy. You've conceded they have invented your invention before you. It's very easy. They can look at your concession. And you would lose. Actually, I don't think we did concede. I thought we didn't argue it. I'm sure it would be characterized in that way. I just didn't think that it was prior art. I mean, I don't know. That it's just not available. Would you like to preserve what's remaining? Sure. Thank you. Thank you, Mr. DeMont. Mr. Stahl. May it please the court. I think we'd like to clarify one point initially. And that is that the reference that's relied on here is the Tran patent. And what the provisional application does is, as you described, Your Honor, is provide evidence of the earlier invention. And that the patent, therefore, has an effective filing date that dates back to the filing date of that provisional application. But the reference relied on by the PTO to reject these claims is, in fact, the issued patent to Tran. So you're not saying that the provisional application should be treated as an application for purposes of 111E? The provisional application itself? No. We would not treat that application as the reference. Right. It's 119E that gives you the earlier reference date for the patent. That's absolutely correct, Your Honor. The chain goes back through the non-provisional. That's kind of confusing. I mean, 111 says that you treat it as an application for a patent. Looks like you would. Unless, and 102E is not one of the places that's mentioned as an exception. So why wouldn't you just say it's prior art as is? The provisional itself is prior art. Well, it's just like we treat other non-provisional applications that go abandoned to which a later filed application claims priority and then issues the patent. It's the patent that is the reference that 102E states. Well, it gets us to the same place. It strikes me that your position is a little inconsistent with the language of 111. Well, what 111 says is that when we look to other provisions of the Act, other than the ones listed specifically by number, and again, 102E is not there, that we must treat provisional applications the same way we treat provisional applications. And under Klesper, Wertheim... Which means it will be prior art. Well, it affords, it will be, what happens, 119... We treat it the same, therefore it's prior art. Well, we treat the later application as though filed on the same date. That's what the language of 119 requires. We're going to get to the same place. It just seems like your argument is a little inconsistent with the language of 111. Well, if you go to 111B8, one of the questions that came up was what about applying the art as 102G? And I think 111B8 dictates that the provisional itself cannot be used in an interference proceeding as the reference, but what it does do is provide the earlier effective date for the prior art reference that issues as a patent. But it gives you not only the priority date, it also gives you the effective date for prior art purposes, the filing of the provisional application. Absolutely, Your Honor. That's the clear implication of 111B8. So here you have a patent which essentially was issued, and it's relying for priority date on the provisional application, which also becomes a reference date for the material that's disclosed in the patent application. That's correct, and the distinction here, the test that the courts have laid out, is whether the application, the earlier filed application to which the claim of priority is raised, is a U.S. application. Was disclosed in that. Correct. Now, Congress, to answer your question, Judge Garza, with respect to TRIPS, there were several amendments made to the various relevant provisions. For example, 104 was amended to allow applicants who file 131 affidavits attempting to get around this type of prior art to rely on activity in foreign countries. They have to be WTO countries or NAFTA countries. But that's one of the effects of the TRIP agreement. Another change to relevant statute, of course, is 102E allows prior art to be based on PCT applications, which of course is sort of this quasi, it's a foreign application essentially. It's not a U.S. application, but Congress made the decision in light of TRIPS and the Paris Convention to go ahead and amend that, amend 102E to allow for such earlier applications, non-U.S. applications to have an effective, an early effective filing date for a patent issued under 102E. So let me ask you the same question. Based upon TRIPS and the international treaties that we've entered into, WTO and some of the others, is Hilmer still good law? That's a good question. It's unclear, I think, at this point whether it's good law or not. It clearly defined the subject matter, the application type that can be relied upon to provide an earlier effective filing date based on a distinction drawn between U.S. filed applications and foreign filed applications. And this holding is based on the language of 102E, which required that the application be an application filed in the United States. So in many regards, it's no longer consistent. In effect, it's been overruled, hasn't it, by the treaties? Even if we don't revisit it directly, we're forbidden to treat foreign applications any different from U.S. applications. Well, again, I think 102E clearly says that these applications have to be U.S. applications to reach back and say Hilmer is completely overruled and that any foreign filed application would provide an earlier effective date. I'm not sure the court could go that far. But it's clear here that Congress created another... Because the statute doesn't go that far. Because the statute, correct, says filing in the United States. With the exceptions that Congress has laid out in that statute and in the other provisions in the other sections of the Act. But here we have a U.S. application. This is another form of U.S. application. And in case there was any doubt, when Congress promulgated 111B8, it clarified that there are only four sections of the Act to which this equal treatment must be exempted. Otherwise, these provisional applications must be treated the same as non-provisional applications. And we know, again, from Klesper, Hazelton, as I said before, it's clear that non-provisional applications will establish an earlier effective date. So to give effect to 111B8, we must also apply the same principle to provisional applications. They, too, must provide an earlier effective filing date. I want to address the real fundamental principle of what I believe Milborn says. And because, Judge Reiter, you raised this question earlier, if you read Milborn, it does talk about this race to the Patent Office. But these applications, the key question here is, does this document get disclosed to the public? And once one files a provisional application, they have 12 months to perfect it into a U.S. non-provisional application from which the patent could then issue. And it's only patents that issue from these provisional applications that will become prior art. Because that's what 102E requires. Either the application publishes, the non-provisional application publishes, or under Section 2 of 102E, the patent must issue. So we have disclosure to the world. And that's within the confines of what Milborn was looking for. And also, Milborn, if I could quote... Let me ask you a hypothetical question. Assume that I file a provisional which broadly discloses a vast number of facts and inventions. And then my patent application that comes later claims only a small portion of what my provisional disclosed. What would be the prior art effect of everything I did not place in my later filed patent application, but which I disclosed fully in my provisional? Well, I think the NPEP may address this. I'd have to go back and verify because I wasn't contemplating that issue. But I believe that for... It's not before us here. I understand that. It kind of puts the distinction you've been making to a test. Well, the key for this case is whether the... I'm not asking this case. I'm asking you now to justify the broader question of I have disclosed four very important inventions. I later claim only one. What happens to the prior art effect of the other three? Well, I'm not sure it's the claims that would dictate the outcome of your hypothetical. I believe it's the sufficiency of the disclosure and the issued patent. You only disclosed. I only disclosed. I limit my disclosure. You're right. It's the whole patent that is the prior art. But I limit my disclosure to only one of the four very important inventions. I think the NPEP, to be consistent with the NPEP, it would be just the scope of the disclosure of the issued patent. Again, it's... 102E is the reference is the issued patent. And the rest of it is not carried over into the issued patent. Then it cannot be relied upon. But, again, I'd have to go back and verify. But if it's published, Mr. Stoll, at the end of the 12-month period, you can file a patent application in one of the four. But what if the balance of the provisional application is published? Well, it would be publicly available. Is it a public document at that time as of the date it was filed? And it becomes a reference point? It does not issue. It does not become public. One of the provisions of 111 dictates that it doesn't become public unless the benefit is claimed to it in a later application. The whole provisional would become public in Judge Rader's hypothetical of the four inventions? Correct. And presumably you would say that as of the publication date it qualifies as prior art? The provisional? It may. It may. But why not relate it back to the original filing at that point? Why wouldn't it become prior art as of the date of the filing? Well, it may be. It may be prior art as that date. It would not be necessarily prior art under 102E, maybe one of the other provisions. Just like any other publication. 102F or some other publication, right? Because it would be a publication at that point after 18 months. Correct. Well, no, the provisional application wouldn't publish as a normal non-provisional would publish because the statute specifically provides for it not to, in that instance, mimic what happens in non-provisionals. However, once the non-provisional claims priority to it and that becomes a public document, then it becomes publicly available. Now, the PTO's database of prior art issued patents would only contain the version that was in the issued patent. So not all of that disclosure would be found on our text database. So that would complicate it. So in the four invention hypothetical, the provisional application wouldn't be published in its entirety? It would only be published in part? Well, it becomes publicly available. So if you go onto the PTO's website- You get the whole provisional. You get the whole four inventions, right? Correct. Right. Correct. So at least at that point, it's published, it becomes prior art. What you seem to be saying is that unless it's published, the provisional itself is not prior art. That's absolutely correct. So unless there are any other questions. Oh, I did want to just point out the fundamental rule in Millburn. Judge Rager, you may have touched on it, but I wanted to reemphasize it. And at 270 U.S. at 402, the court defined the fundamental rule that it was addressing as- and it says, we repeat, is that the patentee must be the first inventor. So it's inconsistent with the statutes to allow two inventors to get a patent on the same subject matter. And if the second filer is indeed the first inventor, all they need to do is file a 131 declaration and, in fact, prove their case, and they will indeed get a patent. So unless there's anything further. Thank you, Mr. Stoll. Mr. DeMont, you have the remaining about a minute and a half. I would like to say that Judge Rader's hypothetical and the various other hypotheticals where the content of the provisional and the content of the non-provisional are different. Sometimes the provisional is less than the non-provisional, and sometimes it's the opposite, as you suggested. This is where this issue gets very, very complex, unless you just treat the two documents as separate documents and accord each one an effective reference date, depending on some rule of law. But there's no question here that the Trump patent provisional essentially disclosed the information that was applied for in the subsequent patent application. So I will concede that. The second thing is, as far as Milburn is concerned, I think that the reality of how provisionals are filed, often you do file a provisional to put a stake in the ground, and you wait for six or eight or ten months to decide whether or not you think that the environment is such that you should proceed with the patent system or keep the invention a private trade secret. I think filing a provisional application is not tantamount to disclosing the invention publicly. Thank you, Mr. DeMont.